IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

---

JENNY R. R.,

                Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Civil Action No.
5:18-CV-1451 (DEP)

---

APPEARANCES:

FOR PLAINTIFF

OLINSKY LAW GROUP
250 South Clinton Street
Suite 210
Syracuse, NY 13202

FOR DEFENDANT

HON. GRANT C. JAQUITH
United States Attorney for the
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

OF COUNSEL:

HOWARD D. OLINSKY, ESQ.
MARY K. McGARIGAL, ESQ.

RONALD W. MAKAWA, ESQ.
Special Assistant U.S. Attorney

DECISION AND ORDER

Plaintiff Jenny R. R. initiated this action in 2016 to challenge an unfavorable determination by the Commissioner of Social Security ("Commissioner"), denying her application for disability insurance benefits under the Social Security Act. Having prevailed in this court, her counsel now seeks an award of attorney's fees and other expenses, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.[1]

While not contending that the amount sought is unreasonable or unsupported, the Commissioner opposes plaintiff's EAJA application arguing that the government's position in this action was substantially justified. For the reasons set forth below, I find that the government has not carried its burden of establishing that its position in the action was substantially justified, and will therefore grant plaintiff's EAJA fee application.

I.   BACKGROUND

Plaintiff applied for Title II disability insurance benefits under the Social Security Act on May 11, 2015, alleging a disability onset date of

---

[1] Plaintiff's application, which was filed on June 9, 2020, is timely. Dkt. No. 23. Under 28 U.S.C. § 2412(d)(1)(B), a petition for fees under the EAJA must be filed within thirty days of the entry of final judgment. A judgment is deemed final when it is no longer appealable. 28 U.S.C. § 2412(d)(2)(G). In this case the underlying judgment became final on May 11, 2020, sixty days after its entry. *See* Fed. R. App. P. 4.

May 1, 2013. Dkt. No. 8 at 15, 150. In support of her application, she claimed disability as a result of, *inter alia*, post-traumatic stress disorder and attention deficit disorder. *Id.* at 17. At the conclusion of a hearing conducted on December 20, 2017, Social Security Administrative Law Judge ("ALJ") Gretchen Mary Greisler issued a decision on January 25, 2018, in which she denied plaintiff's application for benefits. *Id.* at 12-29.[2] ALJ Greisler's decision became a final determination of the agency on October 24, 2018, when the Social Security Administration Appeals Council denied plaintiff's request for review. *Id.* at 4-7.

Plaintiff commenced this action on December 17, 2018, pursuant to 42 U.S.C. § 405(g). Dkt. No. 1. At the conclusion of a telephonic hearing conducted on March 10, 2020, I issued a bench decision in which, after applying the requisite deferential standard of review, I found that the Commissioner's determination did not result from the application of proper legal principles and was not supported by substantial evidence.[3] An order was issued on March 12, 2020, incorporating that oral decision by reference and ordering that judgment on the pleadings be granted to

---

[2]   All citations to page numbers refer to the pagination generated by CM/ECF, not the page numbers generated by the parties.

[3]   This matter is before me on consent of the parties, pursuant to 28 U.S.C. § 636(c). Dkt. No. 5.

3

plaintiff vacating the Commissioner's determination and remanding the matter to the Commissioner for further proceedings, before a newly assigned ALJ, without a directed finding of disability. Dkt. No. 21. A judgment implementing that order was subsequently issued, also March 12, 2020. Dkt. No. 22.

On June 9, 2020, plaintiff filed the instant motion seeking attorney's fees under the EAJA in the amount of $6,781.37. Dkt. No. 23. On June 23, 2020, the Commissioner responded in opposition to the application, arguing that the government's position in this action was factually and legally reasonable, and that the fee application should therefore be denied. Dkt. No. 24. Having first obtained permission from the court, plaintiff has since filed a reply to the government's opposition and in further support of her EAJA application.[4] Dkt. Nos. 24-25.

## II. DISCUSSION

### A. Standard to be Applied

The EAJA provides, in relevant part, as follows:

> [A] court shall award to a prevailing party . . . fees
> and other expenses . . . incurred by that party in any
> civil action . . . , including proceedings for judicial

---

[4] In that reply, counsel sought recovery of an additional $1,609.79, representing fees for preparation of the reply. Dkt. No. 27. I am exercising my discretion to deny this additional fee request since it did not raise new arguments in response to the Commissioner's opposition.

4

> review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). To qualify for recovery under the EAJA, a plaintiff must demonstrate that (1) she is a prevailing party; and (2) she is eligible to receive an award. *See* 28 U.S.C. § 2412(d)(1)(B); *see also Smith v. Astrue,* No. 10-CV-0053, 2012 WL 3683538, at *1 (N.D.N.Y. Aug. 24, 2012) (Suddaby, C.J.) (citing 28 U.S.C. § 2412(d)(1)(B)); *Coughlin v. Astrue*, No. 06-CV-0497, 2009 WL 3165744, at *1 (N.D.N.Y. Sept. 28, 2009) (Mordue, J.). In addition, the plaintiff must submit an itemized statement from the attorney appearing on her behalf detailing the time expended and the rates at which the fee request is calculated. *Smith,* 2012 WL 3683538, at *1; *Coughlin*, 2009 WL 3165744, at *1. In the event that a plaintiff satisfies these criteria, her EAJA request may nonetheless be denied upon a court's finding the "that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A); *see also Coughlin*, 2009 WL 3165744, at *1.

As was previously noted, the Commissioner opposes plaintiff's application, arguing that the position advanced by the government in this

5

action was "substantially justified." Dkt. No. 22 at 2-5. In support of an application for attorney's fees under the EAJA, a plaintiff must allege that the position on the government was not substantially justified. *Mills v. Colvin*, No. 11-CV-0955, 2013 WL 1499606, at *1 (N.D.N.Y. Apr. 11, 2013) (Sharpe, J.) (citing 28 U.S.C. § 2412(d)(1)(B)). Plaintiff has alleged as much in her EAJA fee application. Dkt. No. 23-1 at 1 ("It is alleged that the Government's position in litigation was 'not substantially justified.'"). With that allegation having been made, the burden now falls upon the Commissioner to establish that his opposition to plaintiff's application for benefits was substantially justified. *Mills*, 2013 WL 1499606, at *1 (citing *Commodity Futures Trading Comm'n v. Dunn*, 169 F.3d 785, 786 (2d Cir. 1999)); *see also Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 81 (2d Cir. 2009) (noting that the burden rests on the government to show that its position was "substantially justified").

The issue of the meaning of the term "substantially justified" for purposes of the EAJA, was before the Supreme Court in the seminal case of *Pierce v. Underwood*, 487 U.S. 552 (1988). In *Pierce*, the Court settled on a test of reasonableness, concluding that the phrase should be interpreted as meaning "justified to a degree that could satisfy a reasonable person." *Id.* at 565; *accord, Green v. Bowen*, 877 F.2d 204,

207 (2d Cir. 1989). In accordance with *Pierce*, the Second Circuit has further construed the term "substantially justified" to mean as "having a 'reasonable basis in both law and in fact.'" *Dunn*, 169 F.3d at 786 (quoting *Pierce*, 487 U.S. at 565); *see Ericksson*, 557 F.3d at 81; *see also* HR No. 96-1418, 96th Cong 2d Sess (1980).

    B.    <u>Analysis</u>

In her application, plaintiff does not illuminate her claim that the government's decision in this action was not substantially justified, instead apparently relying upon the circumstance that she prevailed. Dkt. No. 23-7 at 2. The fact that the government's position in the case was not accepted by the court, however, does not in and of itself dictate a finding, or even raise a presumption, that the government's position was not substantially justified. *Mills*, 2013 WL 1499606 at *1 (citing *Cohen v. Bowen*, 837 F.2d 582, 585 (2d Cir. 1988)); *see Scarborough v. Principi*, 541 U.S. 401, 415, (2004) ("Congress did not, however, want the 'substantially justified' standard to "be read to raise a presumption that the [g]overnment position was not substantially justified simply because it lost the case[.]).

In support of her challenge to the underlying determination of the Commissioner, plaintiff raised multiple issues, contesting both the physical and mental components of the ALJ's residual functional capacity ("RFC")

7

determination, and arguing that ALJ Greisler was not properly appointed under Article II, Section 2, Clause 2 of the United States Constitution. Dkt. No. 9 at 11-27.

### 1. Appointments Clause Argument

The Appointments Clause argument raised in this action stems from the Supreme Court's decision in *Lucia v. Securities & Exchange Comm.*, 138 S. Ct. 2044 (2018), which has resulted in a proliferation of challenges to ALJ determinations in Social Security cases. The argument centers upon Article II, Section 2, Clause 2 of the Constitution, which specifically requires that all "public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States" be appointed by the President. U.S. Const. Art. II, § 2, cl. 1. The Appointments Clause goes on to provide that "the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." *Id.*

In this action, plaintiff asserted that Social Security ALJs, including ALJ Greisler, were not appointed by a court, the President, or the Commissioner of Social Security until July 16, 2018, when the then-acting Commissioner of Social Security formally appointed the agency's ALJs. Dkt. No. 9 at 24-27. There is little question that ALJ Greisler was not

8

properly appointed at the time she rendered her decision on January 25, 2018 in this matter. Dkt. No. 8 at 12-29. The question that courts have wrestled with following the Supreme Court's decision in *Lucia*, however, is whether the Appointments Clause issue must first be presented to the agency in question before being raised in a court challenge to the administrative determination.

As the Commissioner pointed out in his brief in this action, while there is a split of authority regarding whether the Appointments Clause issue must have been exhausted before the agency in order for the issue to be pursued before a district court, the distinct weight of authority favors a finding of an obligation to exhaust the issue administratively. Dkt. No. 16 at 16-25. Indeed, in a previous decision in another action, I accepted the government's position and concluded that a plaintiff is obligated to exhaust an Appointments Clause issue before the agency prior to raising it in a district court proceeding. *See Donna S. K. v. Comm'r of Soc. Sec.*, No. 5:18-CV-1070, (N.D.N.Y. Aug. 21, 2019) at Dkt. No. 16 at 9 ("I conclude that the failure of the plaintiff to raise the issue before the agency results in a waiver of the argument.").

The reason for my acceptance of the minority view in this action stemmed from a decision rendered on January 23, 2020 by the Third

9

Circuit Court of Appeals in *Cirko v. Comm'r of Soc. Sec.*, 948 F.3d 148 (3d Cir. 2020). Dkt. No. 21 at 13 (noting that "*Cirko* found no duty to raise the issue before the agency and found no waiver in failing to do so"). In my decision, I noted that while the Second Circuit had not yet ruled on the question, at least one court within the circuit has opted to follow *Cirko*. Dkt. No. 21 at 13 (citing *Suarez v. Saul*, No. 3:19-CV-173, 2020 WL 913809 (D. Conn. Feb. 26, 2020)).

Since the Third Circuit's decision in *Cirko*—and indeed my order in this case on March 12, 2020, *see* Dkt. No. 21—two Courts of Appeals have persuasively rejected the *Cirko* rationale and adopted the majority view. On June 15, 2020, the Tenth Circuit issued a decision in which it rejected *Cirko*, finding a duty of exhaustion regarding the Appointments Clause issue. *Carr v. Comm'r, SSA*, 961 F.3d 1267, 1275 (10th Cir. 2020), *petition for cert. filed,* No. 19-1442 (Jun. 29, 2020). Likewise, on June 26, 2020, the Eighth Circuit reached a similar conclusion. *Davis v. Saul*, No. 18-3422, 2020 WL 3479626, at *3 (8th Cir. Jun. 26, 2020) ("Application of the exhaustion doctrine is supposed to be 'intensely practical.'"). In addition, two other judicial officers from this court have similarly eschewed *Cirko*. *See Iris R. v. Saul*, No. 19-CV-1165, 2020 WL 2475824, at *5 (N.D.N.Y. May 13, 2020) (D'Agostino, J.); *Danielle R. v. Comm'r of Soc.*

*Sec.*, No. 19-CV-538, 2020 WL 2062138, at *5 (Apr. 29, 2020) (Baxter, M.J.).

In view of the distinct split of authority regarding the exhaustion issue, and the fact that the position adopted by the government in this action appears to represent a majority view, I find that its position regarding this issue was substantially justified.

### 2. Remaining Issues

After determining that a new hearing before a different ALJ was required due to the violation of the Appointments Clause, *see* Dkt. No. 21 at 10-14, I made additional observations regarding this action, referred to by the Commissioner as a "coda," concerning the mental and physical components of the ALJ's RFC finding.[5] Focusing upon the physical aspects of the plaintiff's RFC, ALJ Greisler noted the existence of three medical opinions. *See generally* Dkt. No. 8 at 12-29. The first was issued by Nurse Practitioner Margaret Fisher on July 9, 2015, one week after plaintiff underwent lumbar back surgery. *Id.* at 22, 306. That opinion was given "little weight" because it reflected temporary restrictions resulting

---

[5] "Coda" is a well-known term of art used by musicians and which also refers to "something that serves to round out, conclude, or summarize[.]" *Coda*, Merriam-Webster, https://www.merriam-webster.com/dictionary/coda (last visited Jul. 17, 2020).

from the recent surgery, and thus was not deemed to be representative of plaintiff's maximum level of functioning. *Id.* at 22. The second medical opinion consisted of a report of a consultative examination of plaintiff conducted by Dr. Kalyani Ganesh on September 15, 2015, finding no gross limitations in plaintiff's ability to stand or walk but severe limitations in the areas of lifting, carrying, pushing and pulling. *Id.* at 22, 443-446. That medical opinion was similarly assigned "little weight" based upon a finding that the lack any walking limitation was inconsistent with plaintiff's medical history, and once again as representing an assessment made shortly after plaintiff's back surgery. *Id.* at 22. A third medical opinion was rendered by a treating source, Dr. Ross Moquin, on September 30, 2015, limiting plaintiff to lifting and carrying two and one-half pounds with the additional limitation that she not perform any strenuous activity, including pushing, pulling, bending or twisting. *Id.* at 22, 454. That opinion was likewise accorded "little weight," once again because it set forth temporary restrictions applicable during the acute phase following the plaintiff's surgery. *Id.* at 22.

As I noted in my decision, *see* Dkt. No. 21 at 14, the rejection of those three medical opinions reflecting plaintiff's limitations in her physical ability to perform work functions, resulted in a gap in the record concerning

her physical condition that the ALJ was dutybound to fill. *See Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) ("Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."). In my decision, I observed that ALJ Greisler "was not in a position to substitute her lay opinion for the lacking medical opinions." Dkt. No. 21 at 14. It is well-established that an ALJ is not properly qualified to affix a claimant's limitations based upon raw data contained within her medical records. *See, e.g.*, *Manchester v. Colvin*, No. 13-CV-0308, 2014 WL 4983496, at *5 (N.D.N.Y. Oct. 65, 2014) (Hurd, J.).

Explaining how she fashioned plaintiff's RFC, ALJ Greisler made the following conclusory statement:

> In sum, the above residual functional capacity assessment is supported by the opinions of Dr. Noia and Dr. Blackwell; the objective medical evidence of record; and the claimant's activities of daily living, all of which are as above stated.

Dkt. No. 8 at 23.[6] This explanation is woefully deficient and does not afford the court a basis upon which to conduct a meaningful judicial review of the Commissioner's determination, particularly with respect to the physical

---

[6] The opinions of both Dr. Noia and Dr. Blackwell relate to plaintiff's mental condition and do not address her physical capabilities. Dkt. No. 8 at 68-69, 72-74 (Dr. Blackwell), 437-41 (Dr. Noia).

13

limitations resulting from plaintiff's impairments. In stating that plaintiff stopped receiving any medical treatment for her back condition, the ALJ also overlooked the fact that she was homeless for a period, as well as subsequent visits to emergency departments in which she referenced continued back pain. Dkt. No. 8 at 22, 40, 47. Moreover, in relying upon plaintiff's activities of daily living, ALJ Greisler did not build a logical bridge showing how those daily activities translate to the ability to perform basic work functions on a five day, eight hour basis. *See Nursraty v. Colvin*, 13-CV-0160, 2015 WL 224759 *11 (N.D.N.Y. Jan. 15, 2015) (Kahn, J.) ("[A] plaintiff need not be invalid to be considered disabled[.]"); *see De Leon v. Sec'y of Health & Human Servs.*, 734 F.2d 930, 935 (2d Cir. 1984) (noting that an individual seeking disability benefits "need not be completely helpless or unable to function" (internal quotation marks omitted)).

It is true, as the ALJ noted, that plaintiff cares for her grandson, can take the bus, and goes out twice a week to the laundromat and the grocery store. Dkt. No. 8 at 19-21. ALJ Griesler also noted that plaintiff cares for her personal needs, can cook with assistance and prepare food, can do general cleaning, laundry, and shopping; and can manage money. *Id.* at 19. Plaintiff also socially gets along with friends and family and spends her days doing some chores, resting, reading and watching

television. *Id.* Reference was also made to an exhibit reflecting that plaintiff is able to cook, clean, do laundry, shop, shower and dress and that her activities include watching television and reading. *Id.* at 19, 440. Unfortunately, however, I am unable to conclude these relatively modest activities of daily living reveal that despite her lumbar back condition, plaintiff is capable of performing light work, subject to the restrictions found by ALJ Greisler, on a sustained basis. *Id.* at 20. As many courts have observed, "'a claimant need not be an invalid to be found disabled[.]'" *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *Williams v. Bowen*, 859 F.2d 255, 260 (2d Cir.1988)); *see De Leon*, 734 F.2d at 935; *Oatman v. Comm'r of Soc. Sec.*, No. 13-CV-595, 2014 WL 4384986, at *9 (N.D.N.Y. Sept. 4, 2014) (McAvoy, J.).

In my decision, I concluded that the determination in this case, which rejected the only three medical opinions speaking to plaintiff's physical capabilities, resulted in a gap that should have been filled either through re-contacting plaintiff's treating sources or the ordering of an additional consultative physical examination following plaintiff's recovery from back surgery, and that the ALJ's explanation for her RFC assessment did not

provide a basis for meaningful judicial review, as required.[7] Dkt. No. 21 at 14-18; *see Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)

In sum, had I not remanded the matter for a new hearing as a result of the Appointments Clause violation, *see* Point II.B.1, *supra*, I would have done so on the basis that ALJ Griesler's determination frustrated meaningful judicial review. Dkt. No. 21. Accordingly, I conclude that the government has not carried their burden of demonstrating that their position in this matter was "substantially justified" within the meaning of the statute. *See* 28 U.S.C. § 2412(d)(1)(A).

---

[7] Plaintiff speculates that the ALJ's RFC finding may have been based upon a report issued by J. Konecny, a single decision maker ("SDM"), whose opinion mirrors the RFC finding. Dkt. No. 9 at 17-18. An SDM is a "non-physician disability examiner[] who 'may make the initial disability determination in most cases without requiring the signature of a medical consultant.'" *Martin v. Astrue*, No. 10-CV-1113, 2012 WL 4107818, at *15 (N.D.N.Y. Sept. 19, 2012) (Mordue, J.) (quoting *Social Security Administration: Notices*, 71 FR 45890-01 (Aug. 10, 2006), *available at* 2006 WL 2283653). It is well-established, of course, that the opinion of an SDM carries no weight as a medical opinion at the administrative level. *See, e.g., Robles v. Comm'r of Soc. Sec.*, No. 5:15-CV-1359, 2016 WL 7048709, at *5 (N.D.N.Y. Dec. 5, 2016) (Suddaby, C.J.).

III.   SUMMARY AND CONCLUSION

In order to defeat plaintiff's application for an award of attorney's fees pursuant to the EAJA, the Commissioner was required to prove that the government's position in the action was "substantially justified." In this case, I find that the government has not successfully shouldered that burden. I further find that plaintiff's application for an award of attorney's fee under the EAJA is, in all other respects, proper, and the government does not argue otherwise. Based upon a careful review of her application, I find that plaintiff qualifies for recovery under the EAJA, and that the amount sought is reasonable and justified. Accordingly, it is hereby

ORDERED, that plaintiff's application for an award of attorney's fees under the EAJA (Dkt. No. 23) is GRANTED; and it further

ORDERED, that plaintiff is hereby awarded the sum of $6,781.37. The Commissioner shall therefore remit, by check made payable to the plaintiff but mailed directly to plaintiff's counsel, the total sum of $6,781.37. *See, e.g.*, *Marshall v. Colvin*, No. 13-CV-00943, 2015 WL 507197, at *3 (N.D.N.Y. Feb. 6, 2015) (D'Agostino, J.); and it further

ORDERED, that the Clerk of the Court shall serve the parties with a copy of this Decision and Order in accordance with the Local Rules.

Dated: July 17, 2020
Syracuse, New York

David E. Peebles
U.S. Magistrate Judge